IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

Tony Fountain #152157
Petitioner,

VS.

Dr. Peasant & The Health Care
Providers (H.C.P. unknown at this time)
Warden, Leon Forniss & The
Department of Corrections &
The State of Alabama, et, al,
Respondents.

Case No:
2:06CV548-MHT

## Motion For An Emergency Injunction Pursuant To 42 U.S.C.S. 1983

Comes now, Tony Fountain, by and through himself hereby moves this Honorable Court for the issuance of an injunction, directing the above-named Respondents to cease in acting with "Deliberate INDIFFERENCE" by denying and depriving the petitioner adequate medical attention/treatment. And in support of this motion petitioner asserts the following facts to wit:

1). On or about February 20, 2006, petitioner sign-up for sick-call as a result of seeing spots of Blood in his stool after

defecating. And have been notices those spots of blood every time he use the restroom (defecate). On or about March 1st 2006, petitioner was called over to the prison's health care unit for purpose of lab-work (the drawing of blood). Numerous lab-work has been conducted for the last three to four months. Petitioner was never informed of the "lab-work test results until he filed complaint with the prison's warden one Leon Forniss and the health care unit providers on March 20, 2006.

On or about March 21 2006, I was then called to the prison's health care unit in which Dr. Peasant conducted a prostate examination (the old-fashioned way). In which Dr. Peasant confirmed the fact that blood was in my stool, where he stated "it cause to take your complaint of seeing blood in your stool seriously."

I was leaded to believe by Dr. Peasant that he was going to place me on the list for a free-world colonostic examine appointment and was told to watch the prison's news letter for my name. At which time Dr. Peasant focus my attention away from the most serious health problem. By discussing my bad cholesterol level and good cholesterol intake. Dr. Peasant continued to have "lab-work" done on me concerning my cholesterol level, and talk sessions monitoring my cholesterol (bad) level.

-2-

And further informed me that he couldn't tell anything more about my symptoms of seeing blood in my stool. Dr. Peasant then informed me if it (my condition) got worse to come back and let them know (the Health Care workers). On or about April 24 2006, I again signed up for sick-call inorder to let them know my symptoms had got worst instead of seeing spots of blood I was seeing clots of individual blood in my stool after defecating.

2). And on June 6, 2006, I was called back to the prison health care unit, to see Dr. Peasant. I was scheduled to report to the health care unit at 7:30 A.M that morning and I didn't get to see the Doctor until 4:30 p.m. Lock in a cage room the whole time without running water or bathroom. When I did get to see Dr. Peasant, he avoided talking to me about my appointment for a colonostic examine. Petitioner informed Dr. Peasant his cholesterol level was not his initial request in seeing him and that was because he had spots of blood in his stool which had worsen since his last visit with him. Thereafter asked Dr. Peasant why it was taking

-3-

So long for a colonostic appointment, at which time Dr. peasant informed petitioner that he had requested (recommended) that I be sent out for a colonostic examine. And that he didn't know if I had been approved or not. Dr. peasant then performed another prostake examine after the petitioner told him (Dr. peasant) that my condition had worsen since the last time he examined me. Shortly after the prostake examination Dr. peasant came to an agreement with petitioner that he was bleeding more then it was the last visit with him. In others words agreed my condition and/or symptons had worses since the first prostake examination.

Petitioner informed Dr. peasant of the urgency and seriousness of these symptons and that they are associate with prostake and colon cancers. And that prostake and colon cancer is the number one killer among men's 40-65 years of age. Dr. peasant responded especially among "African-American" men's therefore acted with "Deliberate Indifference" toward the seriousness and urgency of detecting, diagnosing prostake and colon cancer in it early stages is worthy an ounce of cure/prevention. Estelle v. Gamble

4

429 US 97, 97 S.ct 285, 50 L.Ed.2d. 251 See also 516 F.2d. 937. petitioner stress the facts that he not gay nor do he participate in such activitys, the named Respondent like to associate these symptons with homosexuality amongs prisons.

3) petitioner contends there have been a total failure on the part of the above-named defendant/Respondants to provide adequate diagnosis or treatment/treat such serious medical conditions/symptons as of this date is deliberate denial of adequate medical attention. The health care providers had no problem collecting their inmate co-payment from my P.O.M.d. account on March 2 2006. And have only been going through the mere formality of providing adequate medical assistance to inmate as myself. petitioner points out the facts that he was convicted and sentenced on November 18, 1988 and has been incarcerated since the age of 25 in the Alabama department of Corrections and is now 43 years of age. The last time he was tested for prostate cancer (prior to this action) was in 1989 when he came through Kilby prison in 1989. The petitioner further asserts the

-5-

Facts that the ADOC has an inmate population of 28,000 mens in it system, most of them are between the ages of 40-65. The age when they should be tested for prostate and colon cancers. Estelle, supra.

Petitioner contends that the Alabama department of Corrections does not have a system in place in-order to test inmates for prostate and colon cancer and many are only diagnose with the afore said cancers in it critical stages, Estelle v. Gamble 50 L. Ed. 2d. 251 or after theirs demises. Petitioner presents the question "What do I have to wait until I'am the next victim? In other word for the Respondents start taking. My symptons Seriously (cancer). Such for instant inmate Rufus vine #146409, were taken out to a free-world appointment on June 6, 2006 for a cut on his left leg while playing baseball 10 days after receiving the cut. And here I been complaintings about My symptons since February 20 2006. If this not an out right "deliberate indifference" to my Serious medical claim I don't know what else is any more. Ask yourself the questions what other

then a possible imputation of Mr. Vine left leg and petitioner stands the chance of losing his life. <u>Estelle</u>, supra. Petitioner contends that he been waiting for diagnosis of his symptons and a possible treatment 3½ months and the Respondents and theirs agents have acted with "deliberate Indifference" in diagnosing his Sympton that is associate with prostake and Colon Cancers and in treating it. <u>Estelle</u>, supra.

4). Petitioner further contends that the above named Respondents do not have any type of preventive measure in place, such as a proper diet like fruits, fresh vegetables. The lack of vitamin C can increase the possibility of contracting Colon or prostake cancers. And that petitioner have been incarcerated over 18 years without any such vitamin C ect-----

Moreover, petitioner contends that he have also been denied access to the prison's eye doctor, on or about October 31, 05 I signed up to see the eye doctor. I was called over to the health care unit to sign the inmate co-payment list, at which time the

-7-

Health care nurse on duty only took my blood pressure, temperature and informed me to keep an eye on the prison's inmate news letter for my name. The nurse never once attempted to perform an eye examination (by allowing me to read the eye chart). I explained to the nurse that when I read book or letters the words runs together. Therefore I returned to the inmate prison's population and did what I were instructed to do (watch for my name on news). Petitioner contends since October 31, 05 the eye doctor have made numerous visit to the prison's and has yet to examine the petitioner. During such visit I have attempted to talk with the nurses and eye doctor, and have been stopped at the law library door by the DOC officials. I attempted to inform those officials on numerous occasion that I have been waiting to be examine by the eye doctor since last October 31, 05. Petitioner points out the fact that the named respondents and theirs agents never had any problems with deducing theirs co-payment from money recieved by the petitioner. Petitioner contends after all these fail attempts to see the prisons eye doctor he

-8-

Shortly thereafter Filed a Complaint wit the prisons warden one Leon Forniss, In which he Explained the Facts that he need some Reading glasses and that if DOC didn't want to pay for them that his Family would. And that it was (not being able to see word while Reading) in-terfering with the pursue of My Criminal litigations with which would deny me access to the Court. (see attached Exhibits - A & B Complaints). Petitioner Contends after he filed the Complaint with the warden and health care unit, a Nurse Ellis deliberately lied and said "petitioner didn't meet the criteria of 20/40. And said in response to his complaint that petitioner had 20/25 vision in both Eyes. However petitioner happened to be at the health care unit the day after Nurse Ellis wrote a Responded to the warden on the complaint (attached to his complaint a postal note (yellow)) petitioner asked Nurse Ellis why did he lie about his vision being 20/25 when Petitioner was never Examined by any Nurse on 10-31-05. Nurse Ellis stated I be back and must have fell guilty, because he never came back; but prior to leaving he did state he didn't

Known were he got that Reading From. petitioner contends that his health is in Controversy of seeing Clots of Individual Blood in his Stool, and Every day the Respondents and theirs agents deny him adequate medical treatment and diagnosis the more these symptons (disease) progresses in his body to the point of causing petitioner his life. Estelle v Gamble 50 L.Ed.2d. 251.

Wherefore, petitioner prays that this Honorable Court Issue (t) his Motion For an Emergency injunction as soon as possible and as law and Justice Requires.

Done on this 11th day of June 2006

Affirmed and subscribed by Me James H. Lindsey Jr. on this 11th day of June 2006, My Commission Expires: 1/28/08
James H. Lindsey Jr.
Elmore, Al

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

Tony Fountain #152157
    Petitioner,

                                                Case No: _____

VS.

Dr. Peasant & The Health
Care Providers (H.C.P. unknown at this time)
Warden, Leon Forniss, Depart-
-ment of Corrections & The States
of Alabama, et, al,
    Respondents.

## AFFIDAVIT

My name is Tony Fountain, the Affiant(s) in the above cause and I'm over 21 years of age and can testify to the facts herein in any court of law. I asserts the following facts are true and correct to the best of my knowledge and belief. On or about February 29, 2006, I signed up for Sick-call as a Re-sult of seeing spots of blood in my stool after defeca-ting. Numerous of lab-work test have been conduct on me within the last 3 1/2 months on numerous occasions. The first was on March 1 2006 and several time thereafter

The symptons I was experiencing on February 29 2006 have worsen since then. Such as where I was seeing spots of blood in my stool, now I'am seeing clots of blood (Individually) in my stool.

First, petitioner point out the facts that he is not gay nor does he participate in such monstrosity nor does he condone it the Health care providers like to put all inmates in one Big Box by associating the symptons I'am experiencing with homosexuality. I notified warden Forniss and my familys have phoned him numerous time, because after the phones calls I was called by him whom informed of the nature of calls from my family's. They also have phoned the commissioner of the D.O.C. office of Richard Allen. But the Respondents and theirs agents have yet to diagnose my symptons or to treat me as of this date. petitioner stresses facts that the day to day worrying of not knowning if he's going to wake in which it have maded it difficult for me to get any sleep. petitioner further stress the facts the Respondents does not have a system in place to proper test inmates for prostate and colon cancers. And when the affiant(s) came to prison he was no within the age where prostate and colon cancers were prevalence

-2-

in men's ranging the age of 25 years of age. Petitioner also points out the facts prior to his medical complaint of 2-22-06, he was only tested once and that when he came through Kilby Prison in 1989. And the disease of prostate and colon cancer are more prevalence in men's petitioner age group 40-65, and is the number one killer of "African-American" men's who are the majority of the Alabama prisons system. On June 6, 2006 inmate Rufus Vine went out to a free-world appointment for a small cut he recieved on his left leg while placing base-ball on May 27 06. Also on this date Dr. peasant conducted another prostate examine and determined my symptoms has worsen since my last visit. Petitioner stress the fact that every day the Respondent spend in delaying petitioner diagnosis, and treatment the more possibility the symptoms with progress in the petitioner body placing his health and life in danger. ANYTHING FURTHER YOUR AFFIANT(S) SAYTH NOUGT!

Done this 11th day of June 2006

AFFIRMED AND SUBSCRIBED
Before Me James H. Lindsey Jr.
On this 11th day of June
2006. My commissions expires: 11/28/08
James H. Lindsey Jr.
Elmore, AL.