# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| **TONY FOUNTAIN, #152 157,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 2:06-cv-548-MHT |
| ) | |
| **DR. PEASANT, et al.,** ) | |
| ) | |
| Defendant. ) | |
| ) | |

## ANSWER AND SPECIAL REPORT

**COMES NOW** the Defendant, John M. Peasant, M.D., by and through his attorneys of record, and in response to this Court's Order requiring the Defendants to file an Answer and Special report, states as follows:

As directed, Dr. Peasant has undertaken a review of the complaint filed by the Plaintiff to determine the facts and circumstances relevant to the claims and after such review is submitting this Answer and Special Report. Dr. Peasant also relies upon the medical records for the Plaintiff, as well as his own affidavit, which are simultaneously filed with the Court.

Dr. Peasant asserts the following:

    a.    The complaint fails to state a claim upon which relief can be granted;

b.  Dr. Peasant denies that the Plaintiff is entitled to relief under 42 U.S.C. § 1983;

c.  Dr. Peasant pleads immunity, including, but not limited to, qualified, absolute, discretionary function, and state agency;

d.  Dr. Peasant pleads the defense of qualified immunity. It is clear on the face of the complaint that the Plaintiff has not alleged specific facts indicating that Dr. Peasant has violated a clearly established constitutional right;

e.  Dr. Peasant asserts that the Plaintiff is barred from seeking punitive damages against him in his official capacity;

f.  Dr. Peasant denies that he is responsible for the policies and procedures of the Alabama Department of Corrections;

g.  Some of the Plaintiff's claims may be barred by the applicable statute of limitations; and

h.  Some or all of Plaintiff's claims may be barred by his failure to exhaust administrative remedies.

**FACTUAL REPORT**

Plaintiff Tony Fountain is an inmate of the Alabama Department of Corrections who was convicted of the kidnaping and rape of a minor female. (Def.'s Ex. 2, Henderson Medical Records.)

Prison Health Services ("PHS") is in charge of the medical treatment at Staton Correctional Facility in Elmore, Alabama. PHS has a physician in the prison who is in charge of the treatment of inmates, just like a physician in private practice.

John M. Peasant, M.D., (pronounced 'pē-zant) is a licensed physician in the State of Alabama and is currently employed by Prison Health Services as the Medical Director at the Ventress Correctional Facility in Clayton, Alabama. (Def.'s Ex. 1, Affidavit of John M. Peasant, M.D.)

Dr. Peasant treated the Plaintiff, Tony Fountain, when Dr. Peasant worked at the Staton Correctional Facility. (*Id.*)

On October 31, 2005, Fountain completed a Sick Call Request in which he complained, "I'am [sic] requesting to see the eye doctor only. When reading the words on the pages start running together." (Def.'s Ex. 2, Fountain Medical Records.)

On November 3, 2005, a Utilization Management Form was completed for Fountain's eye complaint by Dr. Peasant. According to his eye exam immediately

prior to this request, i.e., in December 2004, Fountain's visual acuity was measured at 20/25 in both eyes. This did not meet the criteria for an optometrist to see Fountain. (*Id.*)

Fountain's visual exam on December 13, 2005, measured his visual acuity as within the normal range. (*Id.*)

On February 20, 2006, Fountain completed a Sick Call Request in which he complained, "I'am [sic] occasionally noticing blood in my stool. On several occasions in the pass [sic] two months." (*Id.*)

On February 22, 2006, Fountain was examined by PHS staff. No blood was observed in the commode, no dizziness or weakness was observed of him, and Fountain was noted for no history of gastrointestinal bleeding. (*Id.*)

On March 20, 2006, Fountain allegedly filed a handwritten inmate complaint regarding seeing blood in his stool. (*See* Complaint, Exhibit "A" attached thereto.)

On March 31, 2006, Fountain authorized Dr. Peasant to perform a digital rectal exam on him. (Def.'s Ex. 2, Fountain Medical Records.)

On March 31, 2006, Dr. Peasant performed a physical examination of Fountain, and his observations were noted. Specs of his stool were noted as heme-positive. No critical or emergency conditions were observed, and no pain was noted from observing Fountain. (*Id.*)

On April 7, 2006, Fountain allegedly filed a handwritten inmate complaint regarding his vision. (*See* Compl., Exhibit "B" attached thereto.)

On April 13, 2006, Dr. Peasant reviewed Fountain's laboratory results and recorded them in his medical records. Only one of his laboratory values was elevated. Fountain was scheduled for a hepatitis test. (*Id.*)

On April 19, 2006, Fountain's condition was continued to be monitored. He tested negative for hepatitis, and he was scheduled to return for observation in forty days. (*Id.*)

On April 23, 2006, Fountain filled out another Sick Call Request complaining that he saw clots of blood in his stool. He was seen by the medical staff on April 25, 2006, in the morning. (*Id.*)

On or about June 6, 2006, Fountain was again seen by health care workers. His stool was noted as heme-positive again. (*Id.*)

On or about June 20, 2006, Fountain filed his judicial complaint in the United States District Court for the Middle District of Alabama. (*See* Compl.)

On July 3, 2006, Dr. Peasant submitted a Utilization Management Form to evaluate whether a colonoscopy should be performed. Fountain was noted as negative for hepatitis A, B, and C; negative for pain related to his symptoms; and negative for hard nodules in his prostate. (Def.'s Ex. 2, Fountain Medical Records.)

5

On August 10, 2006, Fountain was again examined by PHS health care workers. No rectal bleeding was observed, and the medical notes record that Dr. Peasant had been following Fountain's condition but that another physician would then be evaluating Fountain. (*Id.*)

On August 18, 2006, Fountain's Physician Orders note that he was scheduled for a colonoscopy. (*Id.*)

On August 29, 2006, Dr. Corbusier observed that Fountain was negative for rectal masses. His once-elevated lab value (see April 13, 2006 report) had returned to normal. A colonoscopy for Fountain was scheduled for November 1, 2006. (*Id.*)

On October 10, 2006, Fountain was again examined by PHS health care workers. His medical records noted that he was scheduled for a colonoscopy, and that he was hemodynamically stable. (*Id.*)

**ARGUMENT**

**I.   Eleventh Amendment Immunity.**

Plaintiff does not specify in his complaint whether he intended to assert his Eighth Amendment claim against Dr. Peasant in his official or individual capacity. If he intended to bring his claim against Dr. Peasant in his official capacity, then Dr. Peasant is immune from suit. The Eleventh Amendment to the U.S. Constitution prohibits suits against "the United States by Citizens of another State, or by Citizens

or Subjects of any Foreign State," and has long been held to apply "equally to suits against a state brought in federal court by citizens of that state." *Harbert Int.'l v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998). "The state need not be formally named as a defendant for the [Eleventh Amendment] to apply; state officials sued in their official capacity are also protected by the amendment." *Id.* (internal citations omitted).

Dr. Peasant is not a state official. His employer, Prison Health Services, has contracted with the state to provide medical care to state prisons. An entity that "contracts with a state to perform a function traditionally within the province of the state government, including the provision of medical services to state inmates," is "treated as a government entity and a person acting under color of state law within the meaning of Section 1983." *Edwards v. Ala. Dept. of Corrections*, 81 F. Supp. 2d 1242, 1254 (M.D. Ala. 2000). Dr. Peasant was, and is, an employee of a corporation that provided medical services to the Plaintiff, and the Plaintiff's claims against Dr. Peasant concern duties he was entrusted to perform on behalf of the state. As such, Plaintiff's claims brought against Dr. Peasant in his official capacity are barred by the Eleventh Amendment.

**II.    Qualified Immunity.**

When sued in their individual capacities, qualified immunity protects

government agents such as Dr. Peasant from personal liability from money damages for actions taken in good faith pursuant to their discretionary authority. *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). The test for good faith is an objective one and consists of two parts. First, the defendant must prove that he was acting within the scope of his discretionary authority. Then, the burden shifts to the plaintiff who must demonstrate that the defendant's actions violated clearly established law. *See Harlow, supra.*

Dr. Peasant was clearly acting within the scope of his authority when he treated the Plaintiff. As the prison physician, Dr. Peasant was required to exercise his discretion as a professional medical decision-maker. The first part of the test for qualified immunity being proven, the burden now shifts to Fountain to prove that Dr. Peasant's actions violated clearly established law. This, too, is a two-part test.

The first part of Fountain's burden is whether he has alleged a deprivation of a constitutional right at all. *County of Sacramento v. Lewis,* 523 U.S. 833, 842 n.5 (1998); *Brown v. Cochran*, 171 F.3d 1329, 1332-33 (11th Cir. 1999). If the court determines no deprivation has been alleged, then the inquiry ends. If, however, the court determines that the plaintiff has alleged a cognizable injury, then the court inquires further to determine whether that right was clearly established. *Id.* In the context of medical care, only a serious deprivation that amounts to deliberate

indifference constitutes such a violation. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In this case, Fountain alleges two violations: first, that he has received inadequate medical treatment for blood in his stool, and second, that he has received inadequate medical treatment for his vision.

Regarding his vision, the Plaintiff was clearly not entitled to further treatment according to protocol, and his condition does not amount to a "serious medical need" that if left unattended would "pose a substantial risk of serious harm." *Estelle*, 429 U.S. at 104; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Having 20/25 vision is simply not a serious medical condition. Thus, it is impossible to say he was deprived of a constitutional right, for if any injury occurred, it was *de minimis*. No further inquiry need occur for the Plaintiff's claim regarding his vision because qualified immunity should attach in the first instance. Dr. Peasant now addresses the claim regarding blood in the inmate's stool.

In the Eleventh Circuit, qualified immunity provides a defense except when an individual defendant "violated a clear and specific standard and ... similarly situated reasonable healthcare providers would have known their actions violated [the plaintiff's] constitutional rights." *Adams v. Poag*, 61 F.3d 1537, 1542 (11th Cir. 1995). In this case, Dr. Peasant has given his expert testimony that he met the standard of care for treating Fountain. Because he met the standard of care, Dr.

Peasant could not possibly have believed that his actions were constitutionally impermissible – for both Fountain's intestinal condition and his eye condition. Therefore, Dr. Peasant is due to be dismissed from this lawsuit on the grounds of qualified immunity.

### III. Deliberate Indifference.

Even assuming, however, that this Court concludes that Dr. Peasant is not entitled to qualified immunity in his individual capacity, the Plaintiff must still produce evidence that Dr. Peasant acted or failed to act with deliberate indifference. Neither inadvertent failure to provide adequate medical care nor a health care provider's negligence in diagnosing or treating a medical condition states a claim under the Eighth Amendment. *Estelle,* 428 U.S. at 104. When a prisoner has received medical care, courts hesitate to find an Eighth Amendment violation. *Hamm v. DeKalb County,* 774 F.2d 1567, 1575 (11th Cir. 1985), *cert denied*, 475 U.S. 1096 (1986). A defendant must *purposefully* ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established. *See Wilson v. Seiter*, 501 U.S. 294, 300 (1991) ("The source of the intent requirement is not the predelictions of this Court, but the Eighth Amendment itself, which bans only cruel and unusual *punishment.* If the pain inflicted is not formally meted out *as punishment* ..., some mental element must be attributed to the inflicting officer before

it can qualify." (emphasis in original)).  The Eleventh Circuit has also characterized the deliberate indifference standard as one of "conscious or callous indifference to a prisoner's rights."  *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982), *cert. denied*, 464 U.S. 932 (1983).

Here, Dr. Peasant has reviewed the medical records regarding the care of Fountain and concluded that his treatment met of him met the standard of care.  His symptoms were evaluated in a timely manner, and he was appropriately treated.  Fountain was seen several times by Dr. Peasant and other health care professionals, and a colonoscopy has been scheduled.  Fountain did not meet the criteria for further eye treatment.  There is absolutely no evidence to support the claim that Dr. Peasant was deliberately indifferent to the Plaintiff's medical needs, or that Dr. Fountain intentionally acted to punish the Plaintiff by withholding medical treatment.[1]

Dr. Peasant requests that this report be treated and denominated as a motion for summary judgment.  Dr. Peasant has demonstrated through substantial evidence and appropriate legal argument that there is no genuine issue of material fact relating to the above matters and that he is entitled to judgment as a matter of law.  Fountain's

---

[1] In his judicial complaint, Fountain names Dr. Peasant and "Health Care Providers (H.C.P. unknown at this time)" as parties to the action.  Fictitious party practice is not allowed in the federal courts.  *New v. Sports and Recreation, Inc.*, 114 F.3d 1092, 1094 n.1 (11th Cir. 1997).  Those fictitious defendants should be dismissed.

submission clearly fails to meet his burden. Dr. Peasant is therefore entitled to final judgment in his favor.

          Respectfully submitted,

          **s/H.C. Ireland, III**
          H.C. Ireland, III
          Bar Number: ASB-9915-D66H
          PORTERFIELD, HARPER, MILLS & MOTLOW, P.A.
          22 Inverness Center Parkway
          Suite 600
          Birmingham, Alabama 35242-3721
          (205) 980-5000
          (205) 980-5001 Fax
          E-mail: phm@phm-law.com

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **TONY FOUNTAIN, #152 157,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 2:06-cv-548-MHT |
| ) | |
| **DR. PEASANT et al.,** ) | |
| ) | |
| Defendant. ) | |
| ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and by US mail, First Class postage prepaid, and properly addressed to:

    Tony Fountain #152157
    Staton Correctional Facility
    PO Box 56
    Elmore, AL 36025-0056

    Respectfully submitted,

    **s/H.C. Ireland, III**
    H.C. Ireland, III
    Bar Number: ASB-9915-D66H
    PORTERFIELD, HARPER, MILLS &
    MOTLOW, P.A.
    22 Inverness Center Parkway
    Suite 600

                                                Birmingham, Alabama 35242-3721  
                                                (205) 980-5000  
                                                (205) 980-5001 Fax  
_____E-mail: phm@phm-law.com