IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| TONY FOUNTAIN, #152 157, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 2:06-cv-548-MHT |
| | ) |
| DR. PEASANT et al., | ) |
| | ) |

### SUPPLEMENTAL AFFIDAVIT OF JOHN M. PEASANT, M.D.

| | |
|---|---|
| STATE OF ALABAMA | ) |
| COUNTY OF ELMORE | ) |

1. My name is John M. Peasant, M.D. I am of the age of majority, competent to give this declaration, and have knowledge of the facts set forth herein.

2. I am a licensed physician with the Alabama Board of Medical Examiners. I am currently employed by Prison Health Services as a physician at the Ventress Correctional Facility in Clayton, Alabama.

3. I am familiar with the standard of care, skill, and diligence exercised by other similarly-situated health care providers in performing medical services under similar circumstances.

4. I recall treating Mr. Fountain while he was imprisoned in Staton

Correctional Facility in Elmore, Alabama.

5. Mr. Fountain is a forty-three year old black male (forty-two at the time I saw him) who complained of spots of blood in his stool after each bowel movement. He filled out his first sick call request for this complaint on February 20, 2006.

6. Mr. Fountain was seen at Sick Call on February 21, 2006, by the Sick Call Nurse. The inmates are seen and screened by a Sick Call Nurse before being evaluated by the provider staff, such as a medical doctor.

7. The Sick Call Report was reviewed by a health care provider staff, and an appointment was scheduled with me for March 21, 2006. Also, blood work was ordered to see if any anemia was present to help identify findings of significant blood loss.

8. On March 21, 2006, I saw Mr. Fountain. He complained of passing blood off and on for two months. At the time I saw him, he reported passing "spects of blood" in his stool two to three days prior to the visit. He denied any anal or rectal problems such as hemorrhoids, anal tissue, or anal cuts. My examination revealed no anal or rectal problems. The prostate gland was 2+ enlarged, but no stony hard nodules or any other findings suggesting prostate cancer. There were specs of stool that where hemocult positive. (This means the

little specs of stool found on rectal examination tested positive for blood, suggesting the patient had blood in his gastrointestinal tract.)

9. The blood was reviewed at the time of the patient visit. The blood work was a comprehensive metabolic profile with a complete blood count (CBC). The blood test showed an elevated total cholesterol level of 238 (normal level 100-199) with an LDL (bad cholesterol) of 167 (normal level 0-99). The CBC showed no anemia with a hemoglobin of 16.0 and hematocrit of 46.2 respectively. This suggests no significant bleeding or blood loss at that time. His liver function tests were abnormal and a screening test was ordered by another provider to rule out Hepatitis A, B, and C.

10. I talked to Mr. Fountain about (1) finding traces of blood in his stool, (2) his elevated cholesterol, and (3) his abnormal liver function test. Since his CBC did not suggest any severe blood loss and no grossly bloody stool was found on examination, I would see him again in three to four weeks with repeated blood work. He was asked to report back to the Health Care Unit if any further bleeding occurred.

11. Mr. Fountain was scheduled to see me in April when all the comprehensive blood was complete. Mr. Fountain was seen on April 17, 2006, to discuss follow up on his lab results. His hepatitis studies showed no evidence of

3

hepatitis. Also, a low fat diet was discussed for his elevated cholesterol control. We also discussed further gastrointestinal studies in the future, i.e., a colonoscopy or barium enema. Mr. Fountain was reminded to come to the Health Care Unit if any further gross or obvious bleeding occurred, and he was told that he would be rescheduled in approximately forty days for a repeat rectal examination.

12. Mr. Fountain placed another Sick Call Request on April 23, 2006, with complaints of blood clots in his stool and that his situation was getting worse. A Sick Call visit/screen was scheduled for April 25, 2006.

13. I saw Mr. Fountain on June 6, 2006, for follow up on his rectal bleeding and laboratory test results. He complained of seeing blood in his stool. By physical examination, no gross blood was found on rectal examination, but the stool tested grossly positive (3+) for blood. There were no irritations or abrasions noted on rectal examination. He was told it was time for further testing and evaluation of his colon. His liver function test was normal again. He was told we would start Mevacor to lower his cholesterol.

14. On July 3, 2006, a Utilization Management Referral Review Form ("UM form") was submitted. This is an official in-house form that the provider completes so that a patient/inmate can be taken to a "free world" appointment for a special test or medical specialty visit outside the prison. In Mr. Fountain's case,

this was for a colonoscopy.

15. This form was returned on July 13, 2006, requesting more information. The form was re-submitted with more information as requested.

16. In the meantime, I moved my practice to another correctional facility, after which I was no longer responsible for the care of Mr. Fountain. Mr. Fountains medical records indicate that the new site medical director submitted another UM form on August 19, 2006, which was approved so that Mr. Fountain could go to a "free world" appointment for evaluation for a colonoscopy. The medical recprds indicated that Mr. Fountain would be seen by a gastrointerologist on November 1, 2006. (This date was likely a scrivener's error because the appointment occurred one week later, on November 8th.) The waiting time to see a GI specialist is normally very long, and this appears to have been the case for Mr. Fountain also.

17. In my opinion as a physician, my treatment of Mr. Fountain was reasonable and appropriate for the conditions complained of, and it met the standard of care for services of a similar healthcare provider in similar circumstances.

**FURTHER AFFIANT SAITH NOT.**

_____
John M. Peasant, M.D.

**PERSONALLY APPEARED** before me, a Notary Public in and for said county and state, John M. Peasant, M.D., who after being first duly sworn, that he has read and understands the Affidavit herein and that same are true and correct to the best of his knowledge, information, and belief.

**SWORN TO** and subscribed before me on this the 16th day of November, 2006.

_____
NOTARY PUBLIC