IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

Tony Fountain #152157
    Plaintiff,

VS.

Dr. Peasant, et, al,
    Defendants.

Civil Action No: 2:06-CV-548-MHT

Exhibit - 101

## AFFIDAVIT OF PLAINTIFF IN OPPOSITION TO DEFENDANTS SPECIAL REPORT

My name is Tony Fountain, the affiant(s) in the above styled cause, I'am over 21 years of age and can testify to the facts herein in any court of law. And the facts set forth herein are true and correct to the best of my knowledge and belief. This is my response to defendants Forniss, warden and Dr. Peasant affidavits of 10-30-06 (Mr. Forniss). Plaintiff stress the facts that defendants, Forniss stated in his affidavit that "I received an eye examination on November 3 2006." I never received an eye examination on November 3, 2006, just as I have been told on 10-31-05 that the chart was missing/lost, with the exception of 12-13-05. Some-time shortly after I filed this complaint and the doctor order of 8-18-06 my name

have appeared once on a Chronic Care list for an Eye examination, and again when I arrived at the Health Care Unit I was told the Chart was missing and that it was no were to be found. In which they stated that in the Records; but Dr. Peasant and his attorneys and agents working in direct concert with him have deliberately deleted and/or omitted it from the record and as of this date I have been told it hadn't arrived as of this date. (Eye Chart)

Plaintiff, stress the facts that his Medical Files are in the Care and possession of the defendants, whom can add or delete anything they want to from it regardless if it true or not. And that the defendant Submitted Exhibit-C & D are prime examples of this. The defendants Exhibit-C contradicts theirs Exhibit marked as D. In which defendant(s) Forniss stated in his Affidavit (on page 2) "he Received an Eye Examination on November 3 2006". I never had an Eye Examination on 11-3-05, in which I assumed Warden Forniss maded his assessment on the basis of the documents submitted by Dr. Peasant marked as theirs Exhibit-C. That states "Last Eye examine, 12-22-04, OD 20/25, OS 20/25, OU 20/25". Plaintiff point out the facts that theirs Exhibit-D contradicts (Health Evaluation form) Exhibit-C. In which Exhibit-D shows my Eye examines 40 days later as being "20/20, OD 20/20, OS 20/20, OU".

-2-

The defendants Exhibit-D was Conducted doing an annual Physical Check-up. And is supported by documents that Reads "Kitchen Clearance, notification of Next of kin" that follows Exhibit-D (TF) (I assume they are part of defendants Ex.-D). I was told on 10-31-05 that the Eye Chart was not available and have been told the same-thing as of this date that the Eye Chart was missing. And that one had been ordered. Also (see Nursing Evaluation tool).

2). Plaintiff, Contends that its very Ironic that Nurse Ellis didn't give the Reading of the most Recently Eye examine Result of December 13, 2005 (def't. Ex.-D) instead he gave a November 3 2005 Reading which was never Conducted on me. (def't. Ex.-C) Because his Response to warden, Thomas inquiry shows he stated my eye visions as being 20/25 instead of 20/20. (see plaintiff. Ex. A or B attached to his Complaint). And that defendants, Forniss have talked with me on more then one occasion, Concerning Call's he Received from my Family's Complainting about my condition of see Blood in my Stool, and he would call me to the Common area. Mr. Forniss ensured me that he would look into it (my Complaints) I Informed him/myself verbally, through family's and written Complaints. I had also spoken to his assistance, warden Thomas about my symptoms and Calls from my family's. In which

-3-

both Warden, Forniss and his assistance Thomas informed me personally of the phone calls they both received from my family's. Inquirying about my medical condition and the constant delay in diagnosing and treating my symptoms. I also alerted them to my medical problems through hand written complaints submitted on March 28, 2006, April 7, 2006 and May 26 2006. In which the defendants have found it necessary to omit from the record before the court (theirs Exhitib's – A – D) I am attaching my complaint of May 26, 2006 along with the grievances that was attached to it that was forward to the Health Care unit. (original grievances). The defendants (Health Care unit) failed to comply with theirs own policy, procedure by responsing within three (3) day's of the filing and appealing my first to grievances. Nor did Warden, Forniss and his agents did-n't bother to Reply. (see, Plaintiff Exhibit- SO1).

3). Affiant, further stress the facts that the simple reading of an eye chart is useless in detecting certain type of eye problems. Such as you have some "people who are nearsightedness who can see nearby objects clearly; but have trouble seeing objects that are far way." "Nearsighted-ness is caused by an eyeball that is too long. Which light rays are brought into focus in front of the retina, rather than on it." See (Texas Edition Prentice Hill, Health, Skills, for wellness, pg's. 428) I suppose that the type of visions that most meet the defendants, Forniss and Dr. Peasant

-4-

protocol of 20/40 vision. Than you have people's who are Farsightedness, a person who is farsighted can see faraway objects clearly, but can not see nearby objects well. Farsightedness is caused by an eyeball that is too short, focusing light rays behind the Retina (Texas Edition, supra). Plaintiff stress the facts that a normal reading of an Eye Chart Eye Examine is unusually placed some 15 to 20 feets away from the person who are being Examined. It's possible that I can be one of those Farsightedness individuals, which explain my inability to read material in front of me such as books, letters, court orders, newspapers ect.... And if this the case it will contradict both defendants, Forniss and Dr. Peasant affidavits and nurse Ellis Response of 4-11-06 mentioning my visions as being 20/25 and 20/20 (def't. Ex.-D). Than you have people who are astigmatism (uh stig muh tiz um) or distorted vision. This is caused when the curvature of the cornea or the lens is uneven light rays entering the eye can not be focused at a single point on the retina. In which Eyeglasses or Contact lenses can correct nearsightedness, Farsightedness and astigmatism. (see, Texas Edition)

4). Plaintiff stress the facts the defendants have been acting with deliberate indifference toward my visions problems by failing to diagnose and treat my visions problems in violation of <u>Estelle V. Gamble</u> 429 US 97 at 104 (1976).

-5-

The aforesaid informations of farsightedness, nearsightedness and astigmatism would show it impossible for the defendants inhouse eye examinations to be accurate when especially considering farsightedness vision. Plaintiff, contends if the Court or anyone can place any reading materials before him they would instantly conclude that more testing would be required to, diagnose and treat my visions problem and that the Court can observe my demeanor in such manner. And when I'm attempting to read the light reflects off the paper, pages cause me to skrink my eye's inorder to make out the words. It also cause me headaches and my eye's to run water and to itch. I'm forced to go in borrow another inmates glasses inorder response to this Court order, research case law, read letters from home ect --- Plaintiff stress the facts that nurse Ellis response to the inquiry of the warden, ass't. Thomas contradicts theirs argument concerning my vision being 20/25 on 11-31-05 and 40 days later it 20/20. What would be the purpose of keep signing up, when they are not conducting the eye examines and lying about the reading.

<u>In Opposition To Defendants<br>
Dr. peasant. Affidavit</u><br>
Concering My Symptoms

First, I point out the fact that Dr. peasant and his agents records have my date of birth wrong in which I have informed them on numerous occasions of my correct date of birth 8-24-62

-6-

instead of 8-26-63. I was forty-three and not forty-two when Dr. Peasant was seeing me and/or over my medical needs. (Reported my symptoms of seeing blood in my stool). On my visit to the health care unit on April 25, 2006, I informed Dr. Peasant that not only was I bleeding I was also having problems such as constipation. And as of this date I'm still have constipation problem althought I have not notice any blood in my stool since my colonoscopy examine of November 8 2006. Plaintiff stress the facts that colon and rectal cancers are the second most common type of fatal cancers after lung cancers. And that the warnings signs include bleeding from the rectum, blood in feces, along with changing bowel habits. Also that evidence suggest that bowel cancer may be linked to diets that are high in fat and low in fiber. Early detection depends on each person being alert to these warning signs and other unusual symptoms that was mentioned above. (Informations, came from, Texas Edition, Prentice Hall Health, Skills for Wellness, pgs. 584-587). Plaintiff point out the facts that two polyps was removed from his colon and that the doctor performing the colonoscopy say it (polyps) was the cause of the symptoms I was experincing of seeing blood. And that polyps form into cancers if left un-detected, affiants also stress the point that "deliberate indifference" is also shown by the failure of the defendants to provide proper diet such as fresh fruits, vegetables along with

-7-

whole grain products. Which would prevent such forming of prostate and colon cancers. (Texas, Edition pgs. 587). The defendants don't serve such fresh vegetable, Fruits ect.. in our day to day meals. They don't have such preventive measures, policy in place within the Alabama prison systems which contributed to my symptoms. Plaintiff also point out the facts that he have been experiencing shortness of breath after his colonoscopy examines of November and that he still constipated as of this day. The shortness of breath occur after I have exercised, such as walking and push-ups. Therefore I had to discontinue my exercise routine. I have reasons to beleive the shortness of breath is associated with the medicine given prior to the colonoscopy or the HCEZ Blood pressure medicine or the cholesterol medication I'm taking. I affraid of going to the Health care unit only to have go through the same old thing of taken legal action against them inorder to make them treat me. This also support in the case Fountain v. State 648 So.2d. 591 concerning my back injury that part the defendant submitted file. Plaintiff stress the facts that the defendants in theirs agents have been acting with "deliberate indifference" toward him since his incarceration, and have reasons to beleive they have invidious discriminated against do to his Conviction (nature of). Opinion of The Justice 410 So.2d. 60 at 62. It's also apparent from the answer/response of Dr. Peasant attorney silent plea

-8-

for this Court sympathy when that stated "who was convicted of the kidnapping and rape of a minor female" on page 3 of theirs answer. (Def't. Ex. 2 Henderson Medical Records MMP 1-2 Basic Service profile report). Plaintiff, stress the facts that whole conviction and sentence are solely based off un-corroborated testimony of a 15 year old female (see Exhibit of plaintiff marked as Ex. 502) This evidence was withheld along with the victim age (true) through-out my trial. And was not discovered until 1999 through Federal discovery on a writ of Habea's. For un-corroborate testimony see Code of Ala. 13A-6-44 Commentary pgs. 402. Also withheld was Forensic evidence of hair sample taken from myself and off the victim that shows it was not match. In other words plaintiff, this same informations relied upon by the defendants attorney to silent plea, whatever treatment I received from the Health unit that I deserve. This is also support by Fountain v. State 648 So.2d. 591, the only way I can get the defendants to treat me is to take legal action.

2). Plaintiff, also stress the facts that the defendants raised an affirmative defense of administrative exhaustion which they failed to prove. Wyatt v. Terhune 315 F.3d. 1108 at 1119 (9th Cir. 2003), See also Green v. J.K Schwartz, P.j Doe emus 138 Fed. Appx. 184; 2005 US App. Lexis 1593, No. 04-KNo They failed to prove I didn't exhaust my administrative remedies, by not showing the authenticateness of document (see Ex. D of def't. access to care form) nor did they make reference to it in theirs affidavits as of this date.

-9-

Although they submit a Access to Care form in theirs answer (Ex. D of deft's) which shows what steps plaintiff had to follow in order to appeal his grievance. They don't put forth any evidence that plaintiff didn't follow such procedure in the form of affidavit or other. Nor is Administrative Exhaustion under 42 U.S.C.S. 1997 e(1) is jurisdiction to bar the Court from Review. Nyhuis v. Reno 204 F.3d 65, 69 n.4 (3d. Cir. 2000). Anything further your affiant sayeth nought!

Done on this 31th day of December 2006

_Tony Fountain, Affiant(s)_

AFFIRMED AND SUBSCRIBED
BEFORE ME: _James A. Lindsey Jr._
ON THIS 31st DAY OF _December_ 2006
MY COMMISSION EXPIRES:
1/25/08  Elmore, AL.

## CERTIFICATE OF SERVICE'S

I, hereby, certify, that I have served a true and correct copy of the foregoing as Addressed:

OFFICE OF THE Attorney General
11th South Union Street
Montgomery, Al. 36130

to

Porterfield, Harper, Mills & Motlow, P.A.
22 Inveriness Center Parkway
Suite 600
P.O. Box 530790
Birmingham, Al. 35253-0790

by placing the same in the U.S. Mail on this 3rd day of January 2007, prepaid. (Certified Mail)

Sincerely

