IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

_____

TONY FOUNTAIN, #152 157             *

    Plaintiff,                              *

    v.                                           *     2:06-CV-548-MHT
                                                        (WO)
DR. PEASANT, *et al*.                     *

    Defendants.                         *

_____

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

In this 42 U.S.C. § 1983 action, Plaintiff, an inmate incarcerated at the Staton Correctional Facility ["Staton"], complains that the defendant violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to provide him with adequate medical care and treatment. The named defendants are Dr. John Peasant, a physician at Staton during the relevant time period in question, and Warden Leon Forniss.[1] Plaintiff seeks injunctive relief and monetary damages.[2]

Pursuant to the orders of the court, Defendants filed an answer, special report,

---

[1] Since the filing of this complaint, Dr. Peasant has become the medical director at the Ventress Correctional Facility. (*See Doc. No. 36*.)

[2] Earlier in these proceedings Plaintiff filed a motion to amend complaint in which he sought to name additional defendants to this cause of action. (*See Doc. No. 34*.) The court denied the motion. (*See Doc. No. 35*.) To the extent Plaintiff's motion to amend, however, seeks to amend the complaint to include a claim for damages, the motion to amend the relief sought in this action shall be granted.

supplemental special report, and supporting evidentiary material in response to the allegations contained in the complaint. The court then informed Plaintiff that Defendants' special reports, as supplemented may, at any time, be treated as motions for summary judgment, and the court explained to Plaintiff the proper manner in which to respond to a motion for summary judgment. Plaintiff filed a response to the special reports and supplemental special report filed by Defendants. This case is now pending on Defendants' motions for summary judgment. Upon consideration of such motions, the evidentiary materials filed in support thereof, and Plaintiff's opposition to the motions, the court concludes that Defendants' motions for summary judgment are due to be granted

## I.  STANDARD OF REVIEW

To survive Defendants' properly supported motion for summary judgment, Plaintiff is required to produce some evidence to support his constitutional claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). He must "go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. Plaintiff's mere verification of conclusory allegations is not sufficient to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984). Consequently, when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" summary judgment is due to be granted in favor of the moving party. *Celotex,* 477 U.S. at 322; *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d

607 (11th Cir. 1987). Where all of the materials before the court indicate that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex,* 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987).

Although factual inferences must be viewed in a light most favorable to the non-moving party, and *pro se* complaints are entitled to a liberal interpretation by the courts, a *pro se* litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a material fact in order to avert summary judgment. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). The record in this case demonstrates that Plaintiff has failed to establish that there is any genuine issue as to a material fact in order to avert judgment in favor of Defendants.

## II. DISCUSSION

*A. The Complaint*

Plaintiff signed up for sick call on February 20, 2006 complaining that he had been noticing spots of blood in his stool for the past two months. On March 1, 2006 medical personnel drew Plaintiff's blood for lab work. On March 21, 2006 Dr. Peasant performed a digital rectal exam on Plaintiff and confirmed the presence of blood in his stool. The physician advised Plaintiff to return to the health care unit if his condition got worse. On April 24, 2006, after noticing clots of blood in his stool, Plaintiff submitted a sick call slip. Dr. Peasant examined Plaintiff on June 6, 2006 and agreed that Plaintiff's symptoms had

become worse. Dr. Peasant informed Plaintiff that he had been recommended for a colonoscopy referral but was not aware if the recommendation had been approved. (*Doc. No. 1*.)

Plaintiff also complains that Defendants denied him access to the institution's eye doctor. He states that on October 31, 2005 a nurse took his blood pressure, temperature and advised him to look for his name on the inmate newsletter regarding an eye appointment.[3] Plaintiff contends that the nurse did not perform an eye exam by allowing him to read an eye chart. Despite numerous visits to the prison by the eye doctor, Plaintiff alleges that he never received an eye exam. (*Doc. No. 1*.)

B. The Deliberate Indifference Claim

    i. The Medical Defendant

Plaintiff complains that Dr. Peasant acted with deliberate indifference to his serious medical needs by failing to provide him with an eye exam and by failing to properly evaluate, diagnose, and treat him for the presence of blood in his stool which are symptoms associated with prostate and colon cancer. He contends that Dr. Peasant did no more than go through "the mere formality of providing adequate medical assistance." (*Doc. No. 1 at 5.*)

Defendant Peasant denies that he acted with deliberate indifference to Plaintiff's

---

[3] According to the complaint, Plaintiff was having trouble reading because words were running together. (*Doc. No. 1 at 8.*) As indicated by his filings with this court, however, Plaintiff is able to read and write legal documents.

medical needs and, instead, maintains that he provided him with all necessary medical care and treatment for his medical complaints. Plaintiff was referred to medical staff who evaluated and provided appropriate treatment to him in connection with his complaints of blood in his stool. The specific care and treatment provided depended upon the observations and evaluations of Plaintiff's condition by the attending health care professionals. (*See Doc. No. 36, Peasant Affidavit and Medical Records; Doc. No. 41, Exh. B*; *Doc. No. 47, Medical Records*.)

Dr. Peasant acknowledges that in February 2006 Plaintiff complained of seeing blood in his stool. Contrary to Plaintiff's assertions that he was denied timely and constitutionally adequate medical care for this condition, however, Dr. Peasant states that Plaintiff's condition was appropriately addressed at all times. Treatment for Plaintiff's condition included a digital rectal exam on March 21, 2006 which Dr. Peasant affirms revealed no anal or rectal problems. While Plaintiff's prostate was somewhat enlarged (2+), Dr. Peasant's exam failed to suggest or indicate prostate cancer. Plaintiff's stool did test positive for blood suggesting blood in the gastrointestinal tract. Plaintiff's treatment also included a blood draw. The results of extensive blood testing indicated that Plaintiff had an elevated total cholesterol level but no anemia was found which suggested that there was no significant bleeding or blood loss at the time. Plaintiff's liver function tests were abnormal and, therefore, a screening test was ordered to rule out Hepatitis A, B, and C. Because Plaintiff's bloodwork did not indicate any severe blood loss and no grossly bloody stool was noted, Dr.

Peasant informed Plaintiff that he would see him again in three to four weeks. If Plaintiff experienced any further bleeding, Dr. Peasant advised him to report back to the infirmary. (*Doc. No. 36, Peasant Affidavit and Medical Records Parts 2 and 4; Doc .No. 41, Exh. B*.)

Dr. Peasant next saw Plaintiff in mid-April 2006 to discuss the results of his follow-up lab work. The physician also discussed possible future gastrointestinal studies such as a colonoscopy or barium enema. Plaintiff was told to report to the infirmary if he noted any gross or obvious bleeding and was rescheduled for a repeat rectal examination within forty days. Shortly after that medical visit Plaintiff submitted a sick call slip complaining that his condition was worsening and that he had observed clots of blood in his stool. A sick call screen was scheduled for April 25, 2006. (*Doc. No. 46, Peasant Affidavit and Medical Records Part 2; Doc. No. 41, Exh. B*.)

Dr. Peasant next examined Plaintiff on June 6, 2006 for a follow up on his complaints of rectal bleeding and the results of the lab tests. Plaintiff voiced his concern over observing blood in his stool but Dr. Peasant found no gross blood on physical exam but Plaintiff's stool did test grossly positive (3+) for blood. Dr. Peasant indicated it was time for further testing and evaluation of his colon. Plaintiff's liver function test came back normal. (*Doc. No. 46, Peasant Affidavit and Medical Records Part 2,4, 5; Doc. No. 41, Exh. B*.)

On July 3, 2006 Dr. Peasant submitted a referral form requesting that Plaintiff be taken for a colonoscopy in the free world. The form was returned for additional information on July 13, 2006. The form was resubmitted with the additional information. Another

referral form was submitted on August 19, 2006 which approved Plaintiff for a free world appointment for a colonoscopy.[4] Dr. Richard Miller of Alabama Pathology Associates, P.C., performed a colonoscopy on Plaintiff on November 8, 2006. The results of this procedure showed that Plaintiff had two polyps. Dr. Miller removed the polyps and sent them for analysis. Analysis of the polyps revealed that they were not cancerous. No other findings were reported. Dr. Miller recommended that Plaintiff return for a follow-up in three years. (*Doc. No. 46, Peasant Affidavit and Medical Records Parts 2 and 4; Doc. No. 41, Exh. B; Doc. No. 47, Medical Records.*)

With regard to Plaintiff's claim that he was denied an eye exam, Dr. Peasant asserts that Plaintiff's medical records reflect that he had an eye exam in December 2004 at which time his eyesight measured 20/25 in each eye. On December 13, 2005 Plaintiff underwent a yearly health evaluation which included an eye exam where his eyesight measured 20/20 in each eye. Medical protocol authorizes treatment only where an inmate's vision is 20/40 or worse or if there is some other remarkable condition. (*Doc. No. 36, Peasant Affidavit and Medical Records Parts 2 and 4; Doc. No. 41, Exhs. C, D.*)

To prevail on a claim concerning an alleged denial of adequate medical treatment in violation of the Eighth Amendment, an inmate must, at a minimum, show that the defendants acted with deliberate indifference to his health. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently

---

[4] At the time the August 19, 2006 referral form was submitted, Dr. Peasant had moved his practice to another correctional facility within the State.(*Doc. No. 46, Peasant Affidavit.*)

harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment."). When seeking relief based on deliberate indifference of correctional medical personnel, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) (for liability to attach, the official must know of and then disregard an excessive risk to the prisoner); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986). Consequently, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference). Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

> In articulating the scope of inmates' right to be free from deliberate indifference, however, the Supreme Court has also emphasized that not 'every

> claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291; *Mandel,* 888 F.2d at 787. Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' *Rogers,* 792 F.2d at 1058 (citation omitted). Mere incidents of negligence or malpractice do not rise to the level of constitutional violations. *See Estelle,* 429 U.S. at 106, 97 S.Ct. at 292 ('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel*, 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference). Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment. *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir. 1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991). Moreover, "whether government actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer,* 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter,* 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991).... Even assuming the existence of a serious risk of harm and causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists--and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003). Thus, to survive summary judgment on his claim of deliberate indifference, Plaintiff is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference

to that risk; and (3) causation." *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995).

Defendants' evidence demonstrates that prison medical personnel monitored and evaluated Plaintiff with regard to his complaints of bloody stools and provided treatment in accordance with their assessment of his condition. There is no indication in Plaintiff's medical records that he was ever denied any necessary treatment or that he suffered any injury or damage due to a denial of or a deficiency in medical care while at Staton. (*Doc. No. 36, Medical Records Parts 1-6; Doc. No. 41, Exh. B. Doc. No. 47, Medical Records*.)

Although Plaintiff maintains that Defendant Peasant failed to provide timely diagnoses and/or treatment for his complaints regarding the presence of blood in his stool, he fails to present any medical evidence establishing that he suffered any detrimental effect as a result of Defendant Peasant's actions or that the physician in any way disregarded a substantial risk to Plaintiff's health. Plaintiff has simply provided no evidence that the medical treatment and care he received at Staton, and specifically from Dr. Peasant, was inadequate, detrimental to his health and well-being, or reflective of any disregard by this doctor of a substantial risk of harm to Plaintiff's health.

Similarly, Plaintiff has failed to demonstrate that Defendant Peasant exhibited any deliberate indifference with regard to his request for an eye exam due to his having difficulty with reading. Plaintiff disputes Defendant's assertion that he underwent an eye exam in November 2005 and also maintains that he should have been referred to an outside specialist.

10

Plaintiff, however, has come forward with no significantly probative evidence which demonstrates that Defendant Peasant in any way disregarded a substantial risk to his eye health nor has he alleged any attendant risk to his alleged uncorrected vision that rises to the level of a serious medical need. *See generally Estelle*, 429 U.S. at 104-05 (mere negligence in providing medical care is insufficient to violate the Constitution). Further, that Plaintiff desired a different mode of treatment does not amount to deliberate indifference. *Harris*, 941 F.2d at 1505; *Hamm v. DeKalb County*, 774 F.2d 1567 (11th Cir. 1985) (mere fact that a prisoner desires a different mode of medical treatment does not amount to deliberate indifference).

This court has conducted a thorough and careful review of all the evidentiary materials submitted by Defendants. From that review, the undersigned finds that Plaintiff received adequate and appropriate medical care and treatment in connection with his medical complaints. He has no constitutional right to specific medical treatment on demand simply because he thinks he needs a certain procedure nor does he have a constitutional right to be treated by a specific doctor, nurse, or other medical personnel. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) ("Society does not expect that prisoners will have unqualified access to health care."). Further, to the extent Plaintiff's claim is based upon his own disagreement with the prison medical staff about the course of his medical treatment, as noted, such claim does not amount to deliberate indifference. *Estelle*, 429 U.S. at 107; *Hamm v. DeKalb County*, 774 F.2d. 1567, 1575 (11th Cir. 1985). Additionally, any claim

11

that specific medical procedures have been impermissibly delayed requires an inmate to put verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment. *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188-89 (11th Cir. 1994), *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 (2002). Here, the court finds that no verifying evidence has been produced tending to establish any detrimental effect as a result of Dr. Peasant's actions or that Dr. Peasant in any way disregarded a substantial risk to Plaintiff's health by delaying medical services or medical care to him. *See generally Farrow v. West*, 320 F.3d 1235 (11th Cir. 2003). There is no dispute that Plaintiff was provided medical care and treatment.

At best, Plaintiff provides nothing more than his unsubstantiated opinions about the quality of the medical care he received. His opinions are insufficient to create a genuine issue, and his failure to support his claims with medical or scientific evidence is fatal to them. It is clear that Plaintiff's disagreement is with the efficacy of his treatment. His desire for different or additional treatment does not establish a constitutional violation. *Waldrop*, 871 F.2d at 1033; *Hamm*, 774 F.2d at 1575.[5]

---

[5] The court notes that in the complaint, Plaintiff mentions in passing that he is required to pay a co-pay when he goes to sick call. The law is clear that requiring inmates with adequate resources to pay for a small portion of their medical care does not necessarily result in arbitrary or burdensome procedures which constitute a violation of the Eighth Amendment. *See Reynolds v. Wagner*, 936 F. Supp. 1216, 1224 (E.D. Pa. 1996). Plaintiff does not allege that he was refused necessary medical treatment because he lacked sufficient funds, or that he has been or will be denied necessary medical treatment in the future, or that his health will be endangered by the imposition of a fee for proposed medical service. The law is equally clear that if an inmate is unable to pay for necessary medical care, he must be maintained at state expense. *Estelle v. Gamble*, 429 U.S. 97. Fee-for-medical and/or dental services programs are not a condition which requires inmates to bear unconstitutional conditions, but rather, forces them to make responsible resource allocation
(continued...)

*ii . Warden Forniss*

Plaintiff argues that Defendant Forniss knew or should have known of the violations of his constitutional rights because he put him on notice of the violations via both internal complaints and communications from Plaintiff's family members. Warden Forniss denies violating Plaintiff's constitutional right. Warden Forniss acknowledges that Plaintiff made his complaints known to him and, in response, he referred Plaintiff to the medical staff for evaluation and treatment. (*Doc. No. 41, Exh. A*.)

To prevail against a defendant, Plaintiff must show that the defendant was involved in acts or omissions that resulted in the constitutional deprivation. *Hale v. Tallapoosa County*, 50 F.3d 1579 (11th Cir. 1995). The language of § 1983 plainly requires proof of an affirmative causal connection between the actions taken by a defendant and the constitutional deprivation. *Swint v. City of Wadley, Ala.,* 51 F.3d 988, 990 (11th Cir. 1995). Plaintiff has produced no evidence and makes no argument against Warden Forniss that he either personally participated in the alleged constitutional violation or instigated or adopted a policy that violated Plaintiff's constitutional rights. *See Hill*, 40 F.3d at 1192. The law is clear that supervisory personnel cannot be liable under 42 U.S.C. § 1983 for the action of their subordinates under a theory of respondeat superior or vicarious responsibility. *Monell v. Dept. of Soc. Svces.*, 436 U.S. 658, 691 (1978); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th

---

$^{5}$(...continued)
decisions. *See Martin v. DeBruyn*, 880 F. Supp. 610, 614 (N.D.Ind. 1995). Consequently, to the extent Plaintiff alleges that imposition of a co-pay for sick call visits violates his constitutional rights, such claim entitles him to no relief under the facts presented.

Cir. 2003); *Greason v. Kemp*, 891 F.2d 829, 836 (11th Cir. 1990). Warden Forniss is, therefore, only liable if he personally participated in the allegedly unconstitutional conduct or if there is "a causal connection between his actions . . . and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360. Plaintiff must present sufficient evidence of either (1) a "custom or policy [that] result[s] in deliberate indifference to constitutional rights or . . . facts [that] support an inference that the supervisor directed subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so;" or (2) "a history of widespread abuse [that] put[ ] the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." *Cottone*, 326 F.3d at 1360 (internal quotation marks and citations omitted) (second alteration in original). *See also Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990).

Plaintiff has presented no evidence from which a reasonable trier of fact could conclude that Warden Forniss personally participated in the alleged constitutional violation, he instigated or adopted a policy that resulted in deliberate indifference to constitutional rights, or that there were incidences of widespread abuse. Defendant Forniss' dispositive motion is, therefore, due to be granted.

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendants' motions for summary judgment, as supplemented, (*Doc. Nos. 36, 41, 47*) be GRANTED;

2. Judgment be ENTERED in favor of Defendants and against Plaintiff;

3. This case be DISMISSED with prejudice; and

4. Costs be TAXED against Plaintiff for which execution may issue.

It is ORDERED that Plaintiff's motion to amend complaint to amend the relief sought to include a request for damages (*Doc. No. 34* ) is GRANTED *nunc pro tunc*.

It is further

ORDERED that the parties shall file any objections to the said Recommendation on or before **May 30, 2008**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done, this day 13th day of May 2008.


      /s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE